UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY BOBULINSKI,

   *Plaintiff*,

v.

DANIEL GOLDMAN,

   *Defendant.*

Case No.: _____

DEMAND FOR A JURY TRIAL

## COMPLAINT

1. Defendant, Daniel Goldman, has repeatedly lied about Plaintiff, Anthony Bobulinski, saying that Mr. Bobulinski has used a Trump campaign-paid lawyer to lie since October 2020, spreads Russian disinformation, and is a Trump campaign plant. Defendant lied solely to serve his political agenda by deliberately besmirching the character of Mr. Bobulinski and to protect Joseph Biden. Defendant's assertions are unequivocally false and defamatory. Mr. Bobulinski demanded a complete retraction and deletion of his posts made on X (formerly Twitter) on March 26, 2024, which Defendant wholly ignored. Accordingly, Mr. Bobulinski seeks to hold Defendant accountable for his malicious and knowing lies.

## PARTIES AND JURISDICTION

2. Plaintiff Anthony Bobulinski is an individual who is not a resident or citizen of the State of New York or Washington, D.C.

3. Defendant Dan Goldman is an individual who is a resident and citizen of the State of New York, and is employed in Washington, D.C.

4. This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship, and the amount in controversy exceeds $75,000.

## FACTUAL BACKGROUND

### *Background of Mr. Bobulinski*

5. Mr. Bobulinski is a decorated Navy veteran and successful businessman.

6. For over six years, Mr. Bobulinski was an officer in the United States Navy's elite Naval Nuclear Power Training Command ("NNPTC") as a decorated Master Training Specialist Instructor. He later served as the Command's Chief Technology Officer where he held a Q security clearance from the Department of Energy and from the National Security Agency. When he left NNPTC, Mr. Bobulinski was the top-ranked Direct Input Officer ("DIO") in the entire Command, as is documented in his final Navy Fitness Report ("FITREP").

7. Mr. Bobulinski's awards and decorations include the Navy/Marine Corps Commendation Medal, the Navy/Marine Corps Achievement Medal, and the National Defense Service Medal.



8. After his military service, Mr. Bobulinski became involved in business ventures and eventually met Joseph Biden in May 2017. Hunter Biden subsequently engaged Mr. Bobulinski as his business partner to serve as the CEO of SinoHawk Holdings, a company designed to find investments in the United States. Ultimately, a partnership was formed between the Chinese Communist Party/Chairman Ye through their surrogate, China Energy Company Limited ("CEFC"), a CCP-linked Chinese energy conglomerate, and the Biden Family.

9. Leaked emails eventually raised questions about whether Hunter Biden was profiting off his father's name when he was Vice President of the United States.

10. The emails showed that Joseph Biden was aware of Hunter's business dealings with foreign nations and even personally benefited from them. They contradicted Joseph Biden's several prior assertions that he had no awareness of, or involvement with, his son's business dealings.

11. An email dated May 13, 2017, discussed remuneration packages regarding a business deal with a now-bankrupt Chinese company proposing an equity split of "20" for "H" and "10 held by H for the big guy?"

12. The reference to "the big guy" was used by James Gilliar to refer to Joseph Biden in emails to maintain confidentiality. Hunter Biden referred to his father as "my chairman."

13. Mr. Bobulinski, who considers himself to be a political moderate and previously donated to members of the Democratic Party, decided to put principles above political party. He confirmed the veracity of the emails to the United States

Senate and that Joseph Biden was aware of, and involved with, his son's business dealings with foreign nations, and that the Biden family, including Joseph Biden, accepted money from foreign nations.

14. Indeed, Mr. Bobulinski came forward because of the lies Joseph Biden was telling, and continues to tell today, about his involvement with, and financial benefit from, his son's business dealings.

15. Mr. Bobulinski confirmed that he saw, firsthand, that Hunter Biden would frequently go to his father for his approval or advice for various business deals.

16. Additionally, during the course of their business relationship, Mr. Bobulinski grew concerned that Hunter Biden was using the Chinese company as his "personal piggy bank," and Mr. Bobulinski needed to take certain steps at the board level to minimize that risk.

17. On March 20, 2024, Mr. Bobulinski was sworn in to testify before the United States House of Representatives Committee on Oversight and Accountability as to the conduct he witnessed by Joseph Biden, Hunter Biden, and Biden Family business associates. A photograph of that moment is depicted below.



4

*Defendant's History*

18. Defendant is a Democratic congressman in the United States House of Representatives from New York's 10th congressional district.

19. Defendant comes from one of the wealthiest families in America. He is the heir to the Levi Strauss & Co. fortune and is currently one of the wealthiest members of Congress.

20. Elected to office in 2022, Defendant's campaign raised millions of dollars and received maximum contributions from multiple billionaires, which Defendant leveraged to effectively squash his competition.

21. Defendant is also a lawyer, having graduated from law school in 2005.

22. Prior to running for Congress, Defendant served as lead counsel for the House impeachment managers during the Senate trial of President Trump, in which he was ultimately acquitted.

23. Defendant serves on the United States House of Representatives Committee on Oversight and Accountability. Mr. Bobulinski had been interviewed by the Committee prior to publicly testifying before the Committee on March 20, 2024. Mr. Bobulinski agreed to do so, in part, to accommodate Mr. Hunter Biden's prior dramatic demands to testify before the Committee publicly as well as to answer any and all questions about the truth of the corruption within the Biden Family. The Committee then scheduled a public hearing. Notwithstanding, Hunter Biden failed to appear. His empty chair is shown in the above photograph.

## *Defendant's Lies*

24. On March 21, 2024, shortly after Mr. Bobulinski's most recent appearance before the United States House of Representatives Committee on Oversight and Accountability, Defendant posted on X, "Tony Bobulinski has used a Trump campaign-paid lawyer to make false allegations since October 2020."

25. Defendant also wrote on March 21, 2024, that Mr. Bobulinski's testimony was "Russian disinformation."

26. On February 14, 2024, Defendant directed a post to Oversight Chairman, James Comer, while discussing Mr. Bobulinski, writing, "You brought in a Trump campaign plant to peddle your same lies."

27. Each of the statements is unequivocally false.

28. It is a matter of fact that since 2020, when Mr. Bobulinski first started speaking publicly against the Biden Family's corruption, he has spent over $500,000 of his own money on legal fees. Neither President Trump, nor any Trump affiliated entities, have ever paid for Mr. Bobulinski's legal fees. Rather, he did because of his strong sense of civic duty.

29. Further, Mr. Bobulinski is not affiliated with the Trump campaign in any way. He has never lied to Congress, or anyone else, from the inception of when he first started speaking publicly in 2020 about Biden Family improprieties with the Chinese Communist Party and affiliated organizations. Mr. Bobulinski's testimony, despite Defendant's delusional assertion, is not "Russian disinformation,"—the ever-present garbage so often used by Democrats invariably reflecting their lack of any

substantive support based in reality. Rather, Mr. Bobulinski is a patriotic American. He is neither a Republican, nor a Trump campaign plant, and is most definitely not working with the Russians to spread disinformation and lie to the American people.

30. Defendant deliberately and maliciously made these statements, outside the scope of his employment, in an attempt to discredit Mr. Bobulinski's testimony and to besmirch Mr. Bobulinski's character. It was a mistake for Defendant to believe he was cloaked with immunity for his defamatory statements.

31. Defendant made these statements impromptu on X, outside of Congress, and used none of Congress' resources. He did so not to inform the public with facts, but rather, for the unforeseeable act to attack Mr. Bobulinski with lies to try and repair the image of Joseph Biden in the wake of evidence of corruption presented against the Biden Family. Defendant's conduct was solely to achieve his personal vendetta against Mr. Bobulinski for speaking out against the Biden family. Defendant's post of February 14, 2024, was even made outside of work hours, made at 8:03 AM.

32. By letter dated March 26, 2024, attached as Exhibit A, counsel for Mr. Bobulinski demanded that Defendant retract and delete his defamatory comments.

33. Defendant neither responded to, nor complied with, Mr. Bobulinski's demand.

34. Defendant was aware at the time he made these false statements that they would inflame a segment of the country against Mr. Bobulinski and would falsely cause persons to disbelieve Mr. Bobulinski's sworn testimony.

35. As a member of the Committee on Oversight and Accountability, Defendant was acutely aware that Mr. Bobulinski has not accepted money from President Trump, or any persons or entities affiliated with President Trump, to pay his legal bills. Defendant was further aware Plaintiff has not told any lies, is not a Trump campaign plant, and is certainly not spreading Russian disinformation. Notwithstanding, Defendant has been working in tag-team fashion with fellow Oversight Committee member, Rep. Jamie Raskin, in a social media blitz of defamatory posts deliberately and maliciously besmirching the character of Mr. Bobulinski.

36. Defendant made these lies against Mr. Bobulinski to defame and discredit his character and punish anyone who dared speak up against the Biden Family for its many improprieties with the Chinese Communist Party and affiliated organizations.

CAUSES OF ACTION
COUNT I
(Defamation and Defamation *Per Se*)

37. Plaintiff incorporates by reference the above paragraphs as though set forth fully herein.

38. Defendant has repeatedly defamed Mr. Bobulinski on X, outside the scope of his employment, by claiming that Mr. Bobulinski uses a Trump campaign-paid lawyer to lie and make false allegations, that he has lied about the Bidens since October 2020, that his sworn testimony is Russian disinformation, and that he is a Trump campaign plant.

39. Defendant's assertions are categorically false.

40. Defendant published the defamatory statements on X, knowing that they were false or with reckless disregard for the truth. Given Defendant's employment, and position with the Democratic party, he knew Mr. Bobulinski was telling the truth and knew Mr. Bobulinski was doing so for the benefit of the American people. Defendant deliberately acted with reckless disregard for those truths.

41. The defamatory statements constitute defamation *per se* because by claiming that Mr. Bobulinski lied and made false allegations, Defendant accused Mr. Bobulinski of committing perjury and violating 18 U.S.C. § 1001, for lying to Congress. Further, by claiming that Mr. Bobulinski is spreading Russian disinformation, and is a Trump campaign plant, while using a Trump campaign-paid lawyer, Defendant sought to destroy Mr. Bobulinski's credibility, and it subjected him to hatred, distrust, ridicule, contempt, and/or disgrace by a certain segment of America and the world which lives in an alternate reality. The statement inherently causes people to view Mr. Bobulinski as untrustworthy by negatively implying that his testimony is bought and paid for without the assistance of any extrinsic evidence.

42. The defamatory statements have directly and proximately caused Mr. Bobulinski to suffer significant damages, including damage to his reputation, humiliation, embarrassment, and mental anguish, as well as to his business ventures, and profession. These damages were foreseeable, are long-lasting, and ongoing, and will be suffered in the future.

43. Defendant published the defamatory statements knowingly, intentionally, willfully, wantonly, and maliciously, with intent to harm Mr. Bobulinski, or in blatant disregard for the substantial likelihood of causing him harm and were part of a well-established malicious pattern by Defendant, thereby entitling Plaintiff to an award of punitive damages.

44. As a direct and proximate result of the misconduct of Defendant, Mr. Bobulinski is entitled to compensatory, special, and punitive damages, in the sum of $10,000,000.00, or such greater amount as is determined by the jury.

## COUNT II
### (Defamation by Implication)

45. Plaintiff incorporates by reference the above paragraphs as though set forth fully herein.

46. On March 21, 2024, Defendant wrote, "Tony Bobulinski has used a Trump campaign-paid lawyer to make false allegations since October 2020."

47. In doing so, Defendant intentionally omitted important context that neither President Trump, nor any entities affiliated with President Trump, are paying for Mr. Bobulinski's legal fees at all, and certainly not to lie.

48. Indeed, Defendant intentionally omitted this context in an attempt to discredit Mr. Bobulinski by nonsensically trying to tie together a true fact that a PAC has paid his lawyer's firm, Elections LLC, in the past for work completely unrelated to his lawyer's representation of Mr. Bobulinski, in an attempt to imply defamatory innuendo and an understanding that President Trump is paying for Mr. Bobulinski's

testimony before congress. In so doing, Defendant's defamation by implication sought to discredit Mr. Bobulinski.

49. Defendant's omission of this context left a reasonable viewer with the impression that President Trump or his campaign is paying for Mr. Bobulinski's legal fees, and ultimately, his testimony.

50. Defendant intentionally created this inference to salvage his political party to the detriment of Mr. Bobulinski and his pursuit to expose the truth of the Biden Family corruption.

51. The inference made is defamatory as it leads to hatred, distrust, ridicule, contempt, and/or disgrace for Mr. Bobulinski. Indeed, it caused not only a large segment of the nation which despises all things Trump regardless of reality, but also rational and reasonable viewers, not to trust or find credibility with Plaintiffs.

52. Defendant made the statement with malice. He intended and endorsed the inference because he wanted to continue to discredit Mr. Bobulinski in order to serve Defendant's personal political agenda.

53. As a direct and proximate result of the misconduct of Defendant, Mr. Bobulinski is entitled to compensatory, special, and punitive damages, in the sum of $10,000,000.00 or such greater amount as is determined by the jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Anthony Bobulinski respectfully requests this Court to enter a judgment in his favor and grant relief against Defendant as follows:

a. An award of compensatory, special, and punitive damages of twenty million dollars ($20,000,000.00);

b. An award of Plaintiff's costs associated with this action, including but not limited to their reasonable attorneys' fees and expenses; and

c. Such other and further relief as the Court deems just and appropriate to protect Plaintiff's rights and interests.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 5, 2024

ANTHONY BOBULINSKI
*By Counsel*

Respectfully submitted,

/s/ *Jesse Binnall*
Jesse R. Binnall (Bar VA022)
John C. Sullivan (*pro hac vice*)
Jared J. Roberts (*pro hac vice*)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jesse@binnall.com
         jcs@binnall.com
         jared@binnall.com

*Counsel for Plaintiff*