UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY BOBULINKSI,

        Plaintiff,

    v.

UNITED STATES OF AMERICA,

        Defendant.

Civil Action No. 24-0974 (ABJ)

**MOTION TO DISMISS AND**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

## TABLE OF CONTENTS

Table of Contents ................................................................................................. i

Table of Authorities ............................................................................................. ii

Background ........................................................................................................... 1

    I.    Plaintiff's Allegations .................................................................. 1

    II.    Westfall Certification ................................................................. 2

    III.    Plaintiff Has Not Served the U.S. Attorney's Office ............................. 3

Argument .............................................................................................................. 3

    I.    Plaintiff Has Failed to Serve the U.S. Attorney's Office .......................... 3

    II.    The United States Has Not Waived its Sovereign Immunity to be Sued for Intentional Torts under the FTCA .......................................................... 5

        A.    The FTCA and the Westfall Act ................................................ 5

        B.    District of Columbia Law on Scope of Employment ................................ 6

        C.    Public Statements, Including Social Media Posts, Are Within the Scope of a Member of Congress's Employment ...................................... 8

        D.    The Scope of Employment Analysis Turns on the Nature of the Allegations ............................................................................ 12

        E.    Congressman Goldman Was Acting Within the Scope of His Employment. ........................................................................... 13

        F.    The Intentional Tort Exception of the FTCA Bars Plaintiff's Claims ...... 16

Conclusion ........................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................... 13

*Blair v. District of Columbia,*
    190 A.3d 212 (D.C. 2018) ............................................................................. 8

*Brown v. United States,*
    933 F. Supp. 2d 780 (E.D. Va. 2013) ........................................................... 13

*Carter v. Kendall,*
    Civ. A. No. 23-0210, 2024 WL 289332 (M.D. Ga. Jan. 25, 2024) ............. 4

*Chapman v. Rahall,*
    399 F. Supp. 2d 711 (W.D. Va. 2005) .......................................................... 11

*Council on Am. Islamic Rels. v. Ballenger,*
    444 F.3d 659 (D.C. Cir. 2006) .............................................................. passim

*Does 1-10 v. Haaland,*
    973 F.3d 591 (6th Cir. 2020) ............................................................. 9, 14, 15

*Edmonds v. United States,*
    436 F. Supp. 2d 28 (D.D.C. 2006) ............................................................... 16

*Fuqua v. Turner,*
    996 F.3d 1140 (11th Cir. 2021) .................................................................... 4

*Gardner v. United States,*
    213 F.3d 735 (D.C. Cir. 2000) ..................................................................... 17

*Harbury v Hayden,*
    522 F.3d 413 (D.C. Cir. 2008) ..................................................................... 7

*Jacobs v. Vrobel,*
    724 F.3d 217 (D.C. Cir. 2013) ..................................................................... 7

*Keyter v. McCain,*
    207 F. App'x 801 (9th Cir. 2006) ........................................................... 13, 16

*Kugel v. United States,*
    947 F.2d 1504 (D.C. Cir. 1991) ................................................................... 17

*Larson v. Domestic & Foreign Com. Corp.,*
    337 U.S. 682 (1949) ..................................................................................... 12

*Lewis v. Clarke*,
   581 U.S. 155 (2017) ............................................................................... 13

*Mittleman v. United States*,
   997 F. Supp. 1 (D.D.C. 1998) .............................................................. 17

*Morrissey v. Mayorkas*,
   17 F.4th 1150 (D.C. Cir. 2021) ........................................................ 3, 5

*Operation Rescue Nat'l v. United States*,
   975 F. Supp. 92 (D. Mass. 1997) ............................................. 9, 10, 11

*Osborn v. Haley*,
   549 U.S. 225 (2007) ........................................................................ 6, 16

*Price v. City of Rock Hill*,
   Civ. A. No. 21-2686, 2022 WL 98221780 (D.S.C. Oct. 17, 2022) ...... 9, 14

*Richards v. United States*,
   369 U.S. 1 (1962) ................................................................................ 16

*Trump v. Carroll*,
   292 A.3d 220 (D.C. 2023) .......................................................... 6, 7, 8, 13

*United States v. Brewster*,
   408 U.S. 501 (1972) ........................................................................ 9, 14

*United States v. Rostenkowski*,
   59 F.3d 1291 (D.C. Cir. 1995) ............................................................. 15

*Wagdy v. Sullivan*,
   Civ. A. No. 16-2164 (TJK), 2018 WL 2304785 (D.D.C. May 18, 2018) ............ 17

*Williams v. United States*,
   71 F.3d 502 (5th Cir. 1995) ....................................................... passim

*Wilson v. Libby*,
   535 F.3d 697 (D.C. Cir. 2008) ................................................................ 7

*Wuterich v. Murtha*,
   562 F.3d 375 (D.C. Cir. 2009) .......................................................... 7, 12

**Statutes**

28 U.S.C. § 1346 ..................................................................................... 5, 13
28 U.S.C. § 1746 ......................................................................................... 3
28 U.S.C. § 2671 ......................................................................................... 5
28 U.S.C. § 2679 ................................................................................. 2, 5, 6
28 U.S.C. § 2680 ....................................................................................... 16

By and through their undersigned counsel, Defendant respectfully moves to dismiss this suit pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(5) and Rule 12(b)(1).  In short, Plaintiff Anthony Bobulinksi, who is represented by counsel, has failed to properly serve the United States in this action, and the period for doing so has now expired.  Even if Plaintiff had properly served that United States in this action, named defendant Daniel Goldman, a Democratic congressman in the United States House of Representatives from New York's 10th congressional district, was acting within the scope of his duties as an official of the United States at the time of the alleged incidents in the Complaint, and, therefore, Plaintiff's defamation claims are barred under the intentional tort exception to the Federal Tort Claims Act ("FTCA").

## BACKGROUND

## I.  <u>Plaintiff's Allegations</u>

The following factual assertions, taken from Plaintiff's Complaint, are presumed to be true for purposes of evaluating the Complaint's sufficiency under Rule 12.

Plaintiff, through counsel, filed this defamation suit against Congressman Goldman on April 5, 2024.  Compl., ECF No. 1.  According to the Complaint, on March 20, 2024, Plaintiff appeared at a hearing before the House Committee on Oversight and Accountability ("Committee") to testify about "the conduct he witnessed by [President] Joseph Biden, Hunter Biden, and Biden Family business associates."  *Id.* ¶ 17.  The following day, Congressman Goldman, a member of the Committee, posted statements to his official Twitter/X related to the events of the hearing.[1]  Congressman Goldman posted, "Tony Bobulinski has used a Trump

---

[1]     The Twitter/X account used, @RepDanGoldman, is the Congressman's official congressional account.  The account is linked to the Congressman's official https://goldman.house.gov/ House of Representatives website and is not used for campaign or personal purposes.

campaign-paid lawyer to make false allegations since October 2020," *id.* ¶ 24, and that Plaintiff's testimony was "Russian disinformation," *id.* ¶ 25.  Plaintiff also alleges that, about five weeks prior to his testimony, Congressman Goldman, "directed a post to Oversight Chairman, James Comer, while discussing Mr. Bobulinski, writing, "'You brought in a Trump campaign plant to peddle your same lies.'"  *Id.* ¶ 26.  According to Plaintiff, "[e]ach of these statements is unequivocally false."  *Id.* ¶ 27.  Plaintiff alleges that Congressman Goldman "lied solely to serve his political agenda by deliberately besmirching the character of Mr. Bobulinski and to protect Joseph Biden."  *Id.* ¶ 26.  Plaintiff sued Congressman Goldman for two counts of defamation, alleging that he knew "they were false or with reckless disregard for the truth," *id.* ¶ 40, and "intentionally omitted important context," *id.* ¶ 47.  Plaintiff seeks $20 million in damages.  *Id.* at 12.

## II.   <u>Westfall Certification</u>

The Department of Justice filed a Westfall Certification, certifying that Congressman Goldman was acting within the scope of his duties as an official of the United States at the time of the incidents alleged in this action.  ECF No. 11.  Accordingly, pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679(d)(1), commonly known as the Westfall Act, the United States was substituted as the defendant for all claims asserted against Goldman as it relates to the claims under the Federal Torts Claim Act asserted in the Complaint.  ECF No. 11.

On July 1, 2024, Plaintiff filed a notice of objection to the Westfall Certification, ECF Nos. 12-13, which Defendant addresses herein.  Defendant will not otherwise respond to the notice, absent direction from the Court, given the service issue discussed *infra* and the desire to avoid duplicitous, inefficient litigation on the scope of employment issue.

**III.**    <u>**Plaintiff Has Not Served the U.S. Attorney's Office**</u>

To date, the U.S. Attorney's Office has no record of service in this case.  The undersigned personally checked the service recordation system for the Civil Division of the U.S. Attorney's Office called the "Electronic Green Book," in which service from all three methods described below are recorded.  The Electronic Green Book contains no record of service on the U.S. Attorney's Office in this action as of the time of drafting this filing.

**ARGUMENT**

**I.**    <u>**Plaintiff Has Failed to Serve the U.S. Attorney's Office.**</u>

"To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee." Fed. R. Civ. P. 4(i)(2).  In turn, to serve the United States a party must serve: (1) the U.S. Attorney's Office for the relevant District; and (2) send a copy of a summons and complaint to the Attorney General by registered or certified mail. Fed. R. Civ. P. 4(i)(1).  The Rules go on to emphasize the need to serve the relevant U.S. Attorney's Office—i.e., keying the start of the Government's time to respond to a complaint to the date service on such Office is complete.  Fed. R. Civ. P. 12(a)(2) ("The United States . . . must serve an answer to a complaint . . . within 60 days after service on the United States attorney."); *see also Morrissey v. Mayorkas*, 17 F.4th 1150, 1156 (D.C. Cir. 2021) ("Rule 4's requirement to serve the Attorney General, the head of the Department of Justice, as well as the relevant U.S. Attorney, the local component of the Department, ensures the Department has notice and is able to provide a defense consistent with the broader goals of the government.").  Service is not effective, and this Court lacks jurisdiction, until all these requirements have been satisfied. *Morrissey*, 17 F.4th at 1156 (quoting *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012)).

There are three methods to perfect Rule 4 service of a civil summons and complaint on the U.S. Attorney's Office for the District of Columbia:

(a)      a plaintiff may hand deliver the service package to the U.S. Attorney's Office;

(b)      a plaintiff may send the service package via registered or certified mail to the civil process clerk and service is complete upon delivery to the civil process clerk, *see Fuqua v. Turner*, 996 F.3d 1140, 1155 (11th Cir. 2021) (service by certified mail is not complete until it is received); *Carter v. Kendall*, Civ. A. No. 23-0210, 2024 WL 289332, at *5 (M.D. Ga. Jan. 25, 2024) ("The Court agrees that 'service by certified mail is not sufficient unless the recipient actually receives the mail.' . . . it makes more sense to begin the 60-day period from the date of receipt rather than mailing." (quoting *Morris v. Wilmington Sav. Fund Soc'y*, 360 F. Supp. 3d 363, 369 (W.D. Va. 2018)); or

(c)      a plaintiff may effect service by electronic mail subject to the terms and conditions posted on the Office's website, which contains information on how to effect service under all three methods outlined above.   Fed. R. Civ. P. 4(i)(1)(A); U.S. Attorney's Office for D.C., Civil Division, [https://www.justice.gov/usao-dc/civil-division](https://www.justice.gov/usao-dc/civil-division).

A plaintiff has ninety days to effect Rule 4 service on a defendant.  Fed. R. Civ. P. 4(m). After ninety days, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  *Id.*  That said, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  *Id.*  The decision to dismiss for lack of service or extend the service period is ultimately committed to the sound discretion of the District Court.

*Morrissey*, 17 F.4th at 1156 ("we review a district court's dismissal under Rule 4(m) for abuse of discretion").[2]

Here, Plaintiff, who is represented by counsel, has failed to serve the U.S. Attorney's Office and has failed to seek an extension of time supported by good cause to do so. The Court should therefore dismiss this case without prejudice.

## II. The United States Has Not Waived its Sovereign Immunity to be Sued for Intentional Torts under the FTCA

Even if Plaintiff had served the U.S. Attorney's Office, his defamation claims—the sole claims in his Complaint—are barred under the intentional tort exception of the FTCA, and, therefore, the Court should dismiss his Complaint with prejudice.

### A. The FTCA and the Westfall Act

The FTCA creates a cause of action in federal court against the United States for injuries that result from the negligent or wrongful acts or omissions of federal officials acting within the scope of their employment. *See* 28 U.S.C. §§ 1346(b)(1), 2671- 2680. The FTCA provides the exclusive remedy for all non-constitutional torts allegedly committed by any employee of the federal government in the scope of their office or employment, *id.* § 2679(b)(1), including "officers" in the "legislative branch[]," *id.* § 2671. *See also Williams v. United States*, 71 F.3d 502, 505 (5th Cir. 1995) ("A Member of Congress who holds an office in the U.S. House of

---

[2]     While not at issue here, if a plaintiff demonstrates that they have served the Attorney General or the U.S. Attorney's Office, a court is obliged to extend the time to provide copies of official capacity suits to the individuals or agencies named as defendants. Fed. R. Civ. P. 4(i)(4)(A). Similarly, if a plaintiff sues a government officer or employee in their individual capacity, the time to effect service on the United States must be extended if they have served the individual capacity defendant. Fed. R. Civ. P. 4(i)(4)(A). Neither of these mandatory extension rules apply here—the latter is inapplicable because this is not an individual capacity suit and the former is inapplicable because it allows for extensions to provide the named agency or individual copies of the service papers, not to extend the time for service on the United States. *See id.*

Representatives is clearly an employee or officer of the legislative branch of the federal government.").  Within this framework, as amended by the Westfall Act, when a tort action is brought against a federal employee in his individual capacity, the Attorney General may certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose," upon which time the action shall be deemed an action against the United States and the United States shall be substituted as a party defendant.  28 U.S.C. § 2679(d)(1); *see also Osborn v. Haley*, 549 U.S. 225, 230 (2007).  Thereafter, the claims are governed by the FTCA.  *Osborn*, 549 U.S. at 230; *Wuterich v. Murtha*, 562 F.3d 375, 380 (D.C. Cir. 2009) (after Westfall certification, a suit against the United States is governed by the FTCA).

In the present case, Brian P. Hudak, Chief of the Civil Division, United States Attorney's Office for the District of Columbia, acting pursuant to delegated authority, has certified pursuant to 28 U.S.C. § 2679(d)(2) that Congressman Goldman was acting within the scope of his of his duties as an official of the United States at the time of the alleged incidents.  *See* ECF No. 11 (Westfall Cert.).

Under the FTCA, "scope of employment" is determined by the law of the state where the incident occurred.  *See, e.g.*, *Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 663 (D.C. Cir. 2006).  Here, Plaintiff makes no allegation regarding where Congressman Goldman was located when he posted the statements at issue.  However, because this case has been brought in the United States District Court for the District of Columbia and the statements generally relate to hearing and interview testimony which took place in the District of Columbia, it is reasonable to conclude, absent any contrary allegations, that District of Columbia law would apply.

### B.   District of Columbia Law on Scope of Employment

According to District of Columbia law, which generally follows the Restatement (Second) of Agency, a person is acting within the scope of employment if his conduct: (1) is of the kind he

is employed to perform; (2) occurs substantially within authorized time and space limits; and (3) is actuated, at least in part, by the employee's purpose to serve the master.  *See Trump v. Carroll*, 292 A.3d 220, 228-29 (D.C. 2023); *see also, e.g.*, *Wuterich v. Murtha*, 562 F.3d at 383 (D.C. Cir. 2009).  The District takes a broad view of "the scope of employment."  *See, e.g.*, *Jacobs v. Vrobel*, 724 F.3d 217, 221 (D.C. Cir. 2013); *Wilson v. Libby*, 535 F.3d 697, 711-12 (D.C. Cir. 2008); *Harbury v Hayden*, 522 F.3d 413, 422 n.4 (D.C. Cir. 2008) ("Many states and D.C. apply the scope-of-employment test very expansively [so much so, that] [t]he scope-of-employment test often is akin to asking whether the defendant merely was on duty or on the job when committing the alleged tort.").

As to the first of these elements, the D.C. Court of Appeals has stated that "the scope of an individual employee's job functions is not so narrowly construed as to cover only the conduct expressly authorized," but rather, that there are often informal responsibilities an employee may have that "are just as sound of a basis for applying *respondeat superior* liability."  *Carroll*, 292 A.3d at 230; *cf. Ballenger*, 444 F.3d at 665 ("[Claimant] would presumably have us limit a congressman's appropriate conduct to core legislative functions such as drafting and lobbying for legislation. We reject that view as far too cramped.").  Further, an employee's conduct has been found to be within the scope if the conduct is "of the same general nature as that authorized, or incidental to the conduct authorized."  Restatement (Second) of Agency § 229(1); *see Ballenger*, 444 F.3d at 664 (quoting *Haddon v. United States*, 68 F.3d 1420, 1424 (D.C. Cir. 1995)) (same); *Carroll*, 292 A.3d at 230-31 ("As to whether the tortious conduct was 'incidental to' the authorized conduct, we view this language as an inquiry into whether the tortious conduct was undertaken in service of carrying out an employee's job function.").

In discussing whether an employee's conduct is "incidental to" his or her authorized conduct, "some [D.C. court] precedents have understood this to be a foreseeability inquiry, asking whether 'the conduct in question is so unforeseeable as to make it unfair to charge the [employer] with responsibility.'"  *Carroll*, 292 A.3d at 231 (quoting *Penn Cent. Transp. Co. v. Reddick*, 398 A.2d 27, 30 (D.C. 1979); *see Weinberg v. Johnson*, 518 A.2d 985, 990 (D.C. 1996) (establishing that the tortious conduct must "not be unexpected in view of the servant's duties").

As to the second of these elements, the alleged conduct must have "occur[red] substantially within the authorized time and space limits."  Restatement (Second) of Agency § 228(1)(b).  "What [D.C.] precedents reflect about this issue, however, is the principle that the employer is generally only liable under *respondeat superior* for their 'always on duty' employee while the employee is sufficiently engaged with their employment."  *Carroll*, 292 A.3d at 233.

As to the third element, the employer is liable for the tortious conduct of their employee only if the conduct "is actuated, at least in part, by a purpose to serve the master."  Restatement (Second) of Agency § 228(1)(c).  As the D.C. Court of Appeals explained "an employee's actions need not be wholly in furtherance of the employer's business," finding that if the employee acted, in part, to serve his employer's interest, then even if he were partially motivated by personal grievances, the employer would still be liable.  *Blair v. District of Columbia*, 190 A.3d 212, 226 (D.C. 2018).

## C.   Public Statements, Including Social Media Posts, Are Within the Scope of a Member of Congress's Employment

The range of activities that occur within the scope of a Member of Congress's employment—thus triggering immunity from individual liability under the FTCA—extends well beyond legislative acts.  Members of Congress engage in myriad official actions, apart from legislative acts, as a part of their day-to-day responsibilities, such as "the making of appointments

with Government agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, news releases, and speeches delivered outside the Congress." *United States v. Brewster*, 408 U.S. 501, 512 (1972).  "[F]ederal law defines the nature and contours of [their] . . . responsibilities," one of which is to communicate with constituents on matters of public concern.  *Operation Rescue Nat'l v. United States*, 975 F. Supp. 92, 107 (D. Mass. 1997) (internal quotation marks and citation omitted), *aff'd*, 147 F.3d 68 (1st Cir. 1998).

Members of Congress act within the scope of their employment when they "broadcast their views on pending legislation and related current events through press releases, televised speeches, interviews, and . . . through social media postings," even when said postings are alleged to be defamatory.  *Does 1-10 v. Haaland*, 973 F.3d 591, 602 (6th Cir. 2020).  It is squarely within the expected duties of Members of Congress to comment on issues of national political interest, including through social media, and it is well established that the FTCA protects their ability to do so without fear of legal liability.  *See id.*  In *Does 1-10 v. Haaland*, the Sixth Circuit held that social media posts made by a Congresswoman and a Senator were within the scope of their official duties as elected officials where the posts commented on a confrontation between protestors and school children at the Lincoln Memorial, which received national attention and concerned issues of national political interest.  *See generally id.*  The Court held that the posts in question "were calculated to serve the interests of Defendants' constituents (i.e., employers) by informing them of Defendants' views regarding a topical issue and related legislation."  *Id.* at 602.

Similarly, in *Price v. City of Rock Hill*, a district court in South Carolina upheld a Westfall Act certification where a plaintiff alleged that a Member of Congress posted defamatory remarks on his Facebook page when commenting on a controversial incident involving law enforcement his district.  Civ. A. No. 21-CV-2686, 2022 WL 9822178, at *4 (D.S.C. Oct. 17, 2022).  The court

relied on the reasoning in *Haaland* and found that "[s]ocial media platforms are the 'modern public square,'" and that, "'[t]here is no meaningful difference between [social media posts] and the other kinds of public communications between an elected official and their constituents that have been held to be within the scope-of-employment' of a Member of Congress." *Id.* (quoting *Packingham v. North Carolina*, 582 U.S. 98, 107 (2017), and *Haaland*, 973 F.3d at 602). The court dismissed the case against the Congressman. *Id.* at *6-7.

The *Haaland* and *Price* cases reflect a continuation of a longstanding line of precedents holding that when Members communicate through public statements, they are within the scope of their employment. For example, in *Council on American Islamic Relations v. Ballenger*, the D.C. Circuit held that a Congressman's statements about his recent marital separation during a press interview were made within the scope of his employment. 444 F.3d at 665-66. The district court noted that for Members of Congress, "speaking to the press is a critical part of [their] expected and authorized conduct." *Council on Am. Islamic Rels., Inc. v. Ballenger*, 366 F. Supp. 2d 28, 31 (D.D.C. 2005). On appeal, the D.C. Circuit explained that "service in the United States Congress is not a job like any other," *Ballenger*, 444 F.3d at 666 (internal quotation marks and citation omitted), and a "Member's ability to do his job as a legislator effectively is tied . . . to the Member's relationship with the public and in particular his constituents and colleagues in the Congress," *id.* at 665.

Likewise, in *Williams v. United States*, a Member of Congress was sued for defamation where the alleged defamatory comments were made in the context of a broader television interview. 71 F.3d 502, 504 (5th Cir. 1995). The Fifth Circuit held that the statements were made in the scope of a Congressman's employment because "a primary obligation of a Member of Congress in a representative democracy is to serve and respond to his or her constituents." *Id.* at

507.  His statements, including the allegedly defamatory ones, were made in performance of his duty to "inform[] constituents and the public at large of issues being considered by Congress."  *Id.*

Similarly, the court in *Operation Rescue National v. United States* held that comments made by Senator Ted Kennedy at a press conference following a fundraising luncheon were within the scope of his responsibilities.  975 F. Supp. at 107-09 (D. Mass. 1997), *aff'd*, 147 F.3d 68 (1st Cir. 1998).  During the press conference, Senator Kennedy responded to a reporter's question about a bill he was sponsoring that addressed access to women's health clinics and said that anti-abortion organizations like the plaintiff had a "national policy [of] firebombing and even murder."  147 F.3d at 69 (alteration in original).  In reasoning that these comments were within the scope of the Senator's employment, the court explained that "Senator Kennedy was providing political leadership and a basis for voters to judge his performance in office," that "[s]uch personal and public motives are often closely related," and that "[i]t is natural for public officials to believe that their own success, and that of their political parties, is inextricably linked with the public interest." 975 F. Supp. at 108.

In one final example, the court in *Chapman v. Rahall* held that a Congressman was acting within the scope of his employment when he allegedly called the plaintiff a "bigoted, right wing, redneck, racist wacko" during remarks made to a television reporter.  399 F. Supp. 2d 711, 713, 715 (W.D. Va. 2005) (internal quotation marks omitted).  The court reasoned that the Congressman's communications with the media were meant to "ensure his effectiveness as a legislator" and were a natural "attribute of his job as a legislator."  *Id.* at 714-15 (some internal quotation marks and citation omitted).

Courts have rejected the argument that making a "defamatory statement itself [i]s not conduct of the kind [a member of Congress] is employed to perform."  *Ballenger*, 444 F.3d at 664.

- 11 -

The proper analysis looks to the nature of the communication as a whole, not to the individual statements contained within. *Id.* ("The appropriate question, then, is whether that telephone conversation—not the allegedly defamatory sentence—was the kind of conduct Ballenger was employed to perform.").

Similarly, the mere allegation that a portion of a Member's official statement is defamatory does not take the statement outside the scope of the Congressman's employment. So long as a Member's "conduct was motivated—at least in part—by a legitimate desire to discharge his duty as a [C]ongressman," even comments containing allegedly defamatory statements are within the scope of a Member's official duties. *Id.* at 665. For instance, in *Wuterich v. Murtha*, the D.C. Circuit rejected arguments attempting to parse out specific statements from an interview, instead holding that Congressman John Murtha was acting within the scope of his employment when he made allegedly defamatory comments about American troops in Iraq during a press interview that took place in his campaign office. 562 F.3d at 378-79, 384-85. The court explained that where the "underlying conduct" of giving an interview was "unquestionably of the kind that Congressman Murtha was employed to perform as a Member of Congress," the entire statement was within the scope of his employment. *Id.* at 384*; see also Williams*, 71 F.3d at 507 (allegedly defamatory remarks made within the context of a wide-ranging interview on official subjects "clearly fell within the course and scope of his position as a Member of Congress").

### D.    The Scope of Employment Analysis Turns on the Nature of the Allegations

In deciding whether an official's conduct was within the scope of employment, courts focus on the nature of the allegations rather than simply deferring to a plaintiff's attempt to label the conduct. *See Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 687-88 (1949) (rejecting the view that the "denomination of the party defendant by the plaintiff" is the "sole test of whether a suit was against the officer individually or against his principal, the sovereign"). A court must

inquire into whether the "allegations in [the] complaint make clear that [plaintiff] sued defendant[] based on acts or omissions within the scope of [his] federal office[.]" *Keyter v. McCain*, 207 F. App'x 801, 802 (9th Cir. 2006).  A plaintiff's characterization of his claims as "individual" rather than "official" is not binding. *See id.*; *see also Lewis v. Clarke*, 581 U.S. 155, 162(2017) (directing, in the context of a motion to dismiss on sovereign immunity grounds, that courts "may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign").

Whether the Congressman's statements fall within the scope of his employment as a Member of Congress "is a question of law for the court to decide," not a question of fact.  *Brown v. United States*, 933 F. Supp. 2d 780, 784 (E.D. Va. 2013) (citing *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 436-37 (1995)).  Although courts must take all factual allegations in the complaint as true for purposes of a motion to dismiss, they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### E.    <u>Congressman Goldman Was Acting Within the Scope of His Employment.</u>

At all relevant times, Congressman Goldman served as the U.S. Representative for the 10th Congressional District of New York and as a member of the Committee on Oversight and Accountability, and he continues to serve in these capacities currently.  Accordingly, he is a federal officer and an employee of the federal government who is protected by the FTCA/Westfall Act for acts "within the scope of his office or employment at the time of the incident out of which the claim arose."  *See* 28 U.S.C. §§ 2671, 2679(d)(1). Under District of Columbia agency principles, an action is within the scope of employment if the conduct is: (1) of the kind he is employed to perform; (2) occurs substantially within authorized time and space limits; and (3) actuated, at least in part, by the employee's purpose to serve the master.  *See Carroll*, 292 A.3d at 228-29.

Congressman Goldman's social media posts were within the scope of his employment for at least four reasons.

*First*, as noted above, an essential part of the job of Members of Congress is to speak to their constituents and the public about matters of public importance.  *See, e.g.*, *Williams*, 71 F.3d at 507 ("[A] primary obligation of a Member of Congress in a representative democracy is to serve and respond to his or her constituents.").  One of the many ways in which Members perform this function is through social media. *See Haaland*, 973 F.3d at 602; *Price*, 2022 WL 98221780 at *4-5.  Social media posts were part of the "wide range of legitimate 'errands' performed for constituents." *Brewster*, 408 U.S. at 512. Members of Congress are acting in their official capacity, under color of office, when they "broadcast their views on pending legislation and related current events through press releases, televised speeches, interviews, and … through social media postings." *Haaland*, 973 F.3d at 602.  The proper analysis looks to the communication and its context as a whole. *Ballenger*, 444 F.3d at 664.

Here, Congressman Goldman's statements relate to Mr. Bobulinski's appearances before the Committee.  Compl. ¶¶ 24-26.  Indeed, two of the posts include videos taken directly from a Committee hearing and the third includes video of, and provides commentary on, an interview given by the Committee Chairman relating to the subject of the investigation. *Id.*  These posts were related to matters of public and Congressional interest and were, as the case law provides, at least incidental if not integral to the duties of a Member of Congress.  The posts specifically commented on pending Committee matters and directly related to the testimony received by the Committee regarding its impeachment inquiry and shared Congressman Goldman's opinions regarding its credibility.  Whether the Congressman's "employer" is his constituents, the House of Representatives, the Committee, or the federal government generally, the subject of the posts

related to matters of national interest.  These posts were an expected part of the Congressman's duty to inform the public and his constituents about important political matters and his evaluation of the testimony provided to the Committee.

At bottom, Plaintiff has sued Congressman Goldman for statements about matters of public and Congressional interest; specifically, Mr. Bobulinski's appearances before the Committee. These facts make this case no different in any relevant respect from the many others holding that such statements are within the scope of a Member of Congress's employment because they are integral to the Member's duties to communicate with their constituents and publicly discuss political matters.  *See, e.g.*, *Haaland*, 973 F.3d at 602 (social media posts on matters of public concern are official duties of a Member of Congress); *Williams*, 71 F.3d at 507 (Congressman's statements about lobbying fees made during a press interview about Congress's appropriation of money to restore naval warship were within the scope of his employment).

*Second*, Mr. Bobulinski's assertion that at least one of the statements was posted "outside of work hours" is of no consequence.  Compl. ¶ 31.  It has been recognized that "service in the United States Congress is not a job like any other, it is a constitutional role to be played upon a constitutional stage." *United States v. Rostenkowski*, 59 F.3d 1291, 1312 (D.C. Cir. 1995), *opinion supplemented on denial of reh'g*, 68 F.3d 489 (D.C. Cir. 1995).  Accordingly, Members of Congress do not have set "business hours" in which they conduct their constitutional responsibilities.  Indeed, service in Congress can require many late nights or early mornings depending on the demands of a particular day.  The fact that one of the statements was posted at 8:03 AM does not remove it from realm of official action.

*Third*, while Mr. Bobulinski does not specifically identify in which capacity he sues Congressman Goldman, any label in the Complaint would not be determinative for either the

Attorney General or a court.  Instead, the analysis should focus on the nature of the allegations to determine whether the suit seeks relief from Congressman Goldman in his individual or official capacity.  *Keyter*, 207 F. App'x at 802 (rejecting argument that plaintiff sued federal official defendants in their individual capacities when allegations in the complaint indicated otherwise).

*Fourth*, the posts in question were made on Congressman Goldman's official Congressional Twitter account, using official Congressional resources (such as Congressional email addresses and staff time).  Plaintiff agrees that the posts were sent from Congressman Goldman's official account.  ECF No. 13, at 10 ("[t]he activity in this case was not electoral activity as it took place from Defendant's official accounts").  Mr. Bobulinski's attempt to label these statements as "outside the scope" cannot square with the use of official Congressional resources to operate the account.

For all these reasons, Congressman Goldman was acting within the scope of his duties as a Member of Congress when he took the actions giving rise to this Complaint.  Accordingly, the United States is the proper defendant in this action, and Plaintiff's claims are governed by the FTCA.  *See Osborn*, 549 U.S. at 230.

## F.    The Intentional Tort Exception of the FTCA Bars Plaintiff's Claims.

The Court lacks subject-matter jurisdiction over Plaintiff's claims because they are barred by sovereign immunity.  The FTCA operates as a limited waiver of sovereign immunity rendering the United States amenable to suit for certain tort claims, subject to various exceptions set forth in 28 U.S.C. § 2680.  *See Richards v. United States*, 369 U.S. 1, 6 (1962).  "Claims that fall under one of the exceptions to the FTCA must be dismissed for lack of subject matter jurisdiction." *Edmonds v. United States*, 436 F. Supp. 2d 28, 35 (D.D.C. 2006).  In this case, Plaintiff's defamation claims fall under the FTCA's intentional tort exception, and therefore, sovereign immunity has not been waived.  *See* 28 U.S.C. § 2680(h) (listing libel, slander, misrepresentation,

and deceit as intentional torts that are excepted); *Gardner v. United States*, 213 F.3d 735, 737 n.1 (D.C. Cir. 2000) ("Mr. Gardner's defamation claim against the United States is barred, because suits for libel or slander are prohibited under the Federal Tort Claims Act. 28 U.S.C. § 2680(h) (1994)."); *Kugel v. United States*, 947 F.2d 1504, 1506-07 (D.C. Cir. 1991) (intentional torts exception bars defamation claims); *Wagdy v. Sullivan*, Civ. A. No. 16-2164 (TJK), 2018 WL 2304785, at *3 (D.D.C. May 18, 2018) (same); *Mittleman v. United States*, 997 F. Supp. 1, at *12, n.24 (D.D.C. 1998) ("Plaintiff's defamation claim is clearly barred by § 2680(h).").

## CONCLUSION

For these reasons, the Court should dismiss Plaintiff's Complaint.

Dated: July 6, 2024                    Respectfully submitted,

                                       MATTHEW M. GRAVES, D.C. Bar #481052
                                       United States Attorney

                                       BRIAN P. HUDAK
                                       Chief, Civil Division

                                       By: _____ */s/ M. Jared Littman* _____
                                       M. JARED LITTMAN
                                       Assistant United States Attorney
                                       601 D Street, NW
                                       Washington, DC 20530
                                       (202) 252-2523

                                       *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY BOBULINKSI,

              Plaintiff,

      v.

UNITED STATES OF AMERICA,

              Defendant.

Civil Action No. 24-0974 (ABJ)

## **[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant's Motion to Dismiss, and the entire record herein, it is hereby

ORDERED that Defendant's motion is GRANTED, and it is further

ODERED that this action is DISMISSED.


SO ORDERED:


_____
Date

_____
AMY BERMAN JACKSON
United States District Judge