UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY BOBULINSKI,

    *Plaintiff,*

v.

DANIEL GOLDMAN,
in his Individual Capacity,

    *Defendant.*

Case No.: 1:24-cv-00974 (ABJ)

DEMAND FOR A JURY
TRIAL

## AMENDED COMPLAINT[1]

1.    Defendant, Daniel Goldman, has repeatedly lied about Plaintiff, Anthony Bobulinski, saying that Mr. Bobulinski has used a Trump campaign-paid lawyer to lie since October 2020 including to Congress despite being under oath, spreads Russian disinformation, and is a Trump campaign plant. Defendant lied solely to attack the source of the truth, not the merits, to serve his personal political agenda by deliberately besmirching the character of Mr. Bobulinski and to protect Joseph Biden from revelations about influence peddling. Defendant's assertions are not only unequivocally false and defamatory, but his malicious accusations also incite threats of violence by a certain element in our society who hear them as a call to arms, literally threatening the lives of Mr. Bobulinski and his family. Quite frankly, that is not hyperbolic rhetoric. Defendant is directly responsible as evidenced by the fact that Mr. Bobulinski has had to endure significant expense including the need to

---

[1] Pursuant to Federal Rules of Civil Procedure 15(a)(2), Plaintiff obtained written consent from Defendant's counsel to submit this Amended Complaint.

continuously retain a former SEAL Team for personal/family security.  He has also been compelled to retain counsel to protect and enforce his rights against Defendant, and others, who mistakenly believe their fits of delusional, political and personal hatred, are without consequence. Mr. Bobulinski demanded a complete retraction and deletion of several of Defendant's posts made on X (formerly Twitter) on March 26, 2024, which Defendant wholly ignored.

2.      After filing his original Complaint, Mr. Bobulinski's counsel has discovered that since 2011, Defendant has also maintained what he represents to be a personal X account. Defendant contemporaneously published two posts on that account page which mirrored the maliciously defamatory statements made on what he, himself, refers to as his "government account" which were the subject of the original Complaint. Defendant indiscriminately published his defamatory statements both on his personal and on his government pages on X.  Mr. Bobulinski seeks to hold Defendant accountable for his malicious and knowing lies.[2]

---

[2] Defendant has sought to hide behind a baseless Westfall Act Certification claiming his malicious X posts on his government page were within the scope of his employment as a United States Representative. Despite seeking immunity for himself, Defendant recently referred to the decision from the Supreme Court on immunity, as well as Judge Cannon's recent dismissal of the Mar-a-Lago documents case, as "manufactured immunity," and "the stuff of a banana republic." Press Release, *Statement from Congressman Goldman Following Judge Cannon's Decision to Dismiss Donald Trump's Classified Documents Case*, CONGRESSMAN DAN GOLDMAN (Jul. 15, 2024), https://goldman.house.gov/media/press-releases/statement-congressman-goldman-following-judge-cannons-decision-dismiss-donald.

## PARTIES AND JURISDICTION

3.      Plaintiff Anthony Bobulinski is an individual who is a resident and citizen of Puerto Rico.

4.      Defendant Dan Goldman is an individual who is a resident and citizen of the State of New York, and is employed in Washington, D.C.

5.      This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship, and the amount in controversy exceeds $75,000.

## FACTUAL BACKGROUND

### Background of Mr. Bobulinski

6.      Mr. Bobulinski is a decorated Navy veteran and successful businessman.

7.      For over six years, Mr. Bobulinski was an officer in the United States Navy's elite Naval Nuclear Power Training Command ("NNPTC") as a decorated Master Training Specialist Instructor. He later served as the Command's Chief Technology Officer where he held a Q security clearance from the Department of Energy and from the National Security Agency. When he left NNPTC, Mr. Bobulinski was the top-ranked Direct Input Officer ("DIO") in the entire Command, as is documented in his final Navy Fitness Report ("FITREP"). To be clear, these achievements were earned by Mr. Bobulinski in the toughest command in the entire military for mental acuity, equivalent to rankings for physical prowess in the military such as Basic Underwater Demolition/SEAL (BUD/S) training.

8.     Mr. Bobulinski's awards and decorations include the Navy/Marine Corps Commendation Medal, the Navy/Marine Corps Achievement Medal, and the National Defense Service Medal.



9.     After his military service, Mr. Bobulinski became involved in business ventures and eventually met Joseph Biden in May 2017. Hunter Biden subsequently engaged Mr. Bobulinski as his business partner to serve as the CEO of SinoHawk Holdings, a company designed to find investments in the United States. Ultimately, a partnership was formed between the Chinese Communist Party/Chairman Ye through their surrogate, China Energy Company Limited ("CEFC"), a CCP-linked Chinese energy conglomerate, and the Biden Family.

10.    Leaked emails eventually raised questions about whether Hunter Biden was profiting off his father's name when he was Vice President of the United States.

11.    The emails showed that Joseph Biden was aware of Hunter's business dealings with foreign nations and even personally benefited from them. They contradicted Joseph Biden's several prior assertions that he had no awareness of, or involvement with, his son's business dealings.

12.     An email dated May 13, 2017, discussed remuneration packages regarding a business deal with a now-bankrupt Chinese company proposing an equity split of "20" for "H" and "10 held by H for the big guy?"

13.     The reference to "the big guy" was used by James Gilliar to refer to Joseph Biden in emails to maintain confidentiality. Hunter Biden referred to his father as "my chairman."

14.     Mr. Bobulinski, who considers himself to be a political moderate and previously donated to members of the Democratic Party, decided to put principles above political party. He confirmed the veracity of the emails to the United States Senate and that Joseph Biden was aware of, and involved with, his son's business dealings with foreign nations, and that the Biden family, including Joseph Biden, accepted money from foreign nations.

15.     Indeed, Mr. Bobulinski came forward because of the lies Joseph Biden was telling, and continues to tell today, about his involvement with, and financial benefit from, his son's business dealings.

16.     Mr. Bobulinski confirmed that he saw, firsthand, that Hunter Biden would frequently go to his father for his approval or advice for various business deals.

17.     Additionally, during the course of their business relationship, Mr. Bobulinski grew concerned that Hunter Biden was using the Chinese company as his "personal piggy bank," and Mr. Bobulinski needed to take certain steps at the board level to minimize that risk.

18.     On March 20, 2024, Mr. Bobulinski was sworn in to testify before the United States House of Representatives Committee on Oversight and Accountability as to the conduct he witnessed by Joseph Biden, Hunter Biden, and Biden Family business associates. A photograph of that moment is depicted below.



*Defendant's History*

19.     Defendant is a Democratic congressman in the United States House of Representatives from New York's 10th congressional district.

20.     Defendant comes from one of the wealthiest families in America. He is the heir to the Levi Strauss & Co. fortune and is currently one of the wealthiest members of Congress.

21.     Elected to office in 2022, Defendant's campaign raised millions of dollars and received maximum contributions from multiple billionaires, which Defendant leveraged to effectively squash his competition.

22.     Defendant is also a lawyer, having graduated from law school in 2005.

23.     Prior to running for Congress, Defendant served as lead counsel for the House impeachment managers during the Senate trial of President Trump, in which he was ultimately acquitted.

24.     Defendant serves on the United States House of Representatives Committee on Oversight and Accountability. Mr. Bobulinski had been interviewed by the Committee prior to publicly testifying before the Committee on March 20, 2024. Mr. Bobulinski agreed to do so, in part, to accommodate Mr. Hunter Biden's prior dramatic demands to testify before the Committee publicly as well as to answer any and all questions about the truth of the corruption within the Biden Family.  The Committee then scheduled a public hearing. Notwithstanding, Hunter Biden failed to appear.  His empty chair is shown in the above photograph.

### Defendant's Lies

25.     On March 21, 2024, shortly after Mr. Bobulinski's most recent appearance before the United States House of Representatives Committee on Oversight and Accountability, Defendant posted on X, from his account @RepDanGoldman, "Tony Bobulinski has used a Trump campaign-paid lawyer to make false allegations since October 2020."

26.     Defendant also published on the same account on March 21, 2024, that Mr. Bobulinski's testimony was "Russian disinformation."

27.     The following day, Defendant posted from a different X account, @DanielSGoldman, in response to Rep. James Comer suggesting a need for criminal

referrals, stating, "If @RepJamesComer means referring Bibulinski [sic] for lying to Congress then he has finally stumbled onto a good idea."

28.     Prior to these events, on February 14, 2024, Defendant directed a post to Oversight Chairman, James Comer, from his X account @RepDanGoldman, while discussing Mr. Bobulinski, writing, "You brought in a Trump campaign plant to peddle your same lies."

29.     Two days later, on February 16, 2024, Defendant switched accounts again, posting from @DanielSGoldman, and, in response to the Oversight Committee noting it was releasing the transcripts of Mr. Bobulinski's interview, stated, "Now release the video you took of the interview so that everyone can see what partisan actors the witness and his Trump-funded attorney were."

30.     Each of the statements is unequivocally false.

31.     It is a matter of fact that since 2020, when Mr. Bobulinski first started speaking publicly against the Biden Family's corruption, he has spent over $500,000 of his own money on legal fees. Neither President Trump, nor any Trump affiliated entities, have ever paid for Mr. Bobulinski's legal fees.  Rather, he did because of his strong sense of civic duty.

32.     Further, Mr. Bobulinski is not affiliated with the Trump campaign in any way. He has never lied to Congress, or anyone else, from the inception of when he first started speaking publicly in 2020 about Biden Family improprieties with the Chinese Communist Party and affiliated organizations. Mr. Bobulinski's testimony, despite Defendant's delusional assertion, is not "Russian disinformation,"—the ever-

present garbage so often used by Democrats invariably reflecting their lack of any substantive support based in reality. Rather, Mr. Bobulinski is a patriotic American. He is neither a Republican, nor a Trump campaign plant and is most definitely not working with the Russians to spread disinformation and lie to the American people.

33.     Defendant deliberately and maliciously made these statements, outside the scope of his employment, in an attempt to discredit Mr. Bobulinski's testimony and to besmirch Mr. Bobulinski's character.  It was a mistake for Defendant to believe he was cloaked with immunity for his defamatory statements.

34.     Defendant made these statements impromptu on X, outside of Congress, and used none of Congress' resources. He did so not to inform the public with facts, but rather, for the unforeseeable act to attack Mr. Bobulinski with lies to try and repair the image of Joseph Biden in the wake of evidence of corruption presented against the Biden Family. Defendant's conduct was solely to achieve his personal vendetta against Mr. Bobulinski for speaking out against the Biden family. Defendant's post of February 14, 2024, was even made outside of work hours, made at 8:03 AM.

35.     Additionally, Defendant created his X account, @DanielSGoldman, where he made two of the subject statements, in December 2011, roughly eleven years before he became a congressman, clearly with no intention to speak on behalf of the United States. Defendant explicitly differentiates this account from his @RepDanGoldman, referring to the latter as his "Gov't account" in his bio on his @DanielSGoldman account.

36.    By letter dated March 26, 2024, attached as Exhibit A, counsel for Mr. Bobulinski demanded that Defendant retract and delete his defamatory comments.

37.    Defendant neither responded to, nor complied with, Mr. Bobulinski's demand.

38.    Defendant was aware at the time he made these false statements that they would inflame a segment of the country against Mr. Bobulinski and would falsely cause persons to disbelieve Mr. Bobulinski's sworn testimony.

39.    As a member of the Committee on Oversight and Accountability, Defendant was acutely aware that Mr. Bobulinski has not accepted money from President Trump, or any persons or entities affiliated with President Trump, to pay his legal bills.  Defendant was further aware Plaintiff has not told any lies, is not a Trump campaign plant, and is certainly not spreading Russian disinformation. Notwithstanding, Defendant has been working in tag-team fashion with fellow Oversight Committee member, Rep. Jamie Raskin, in a social media blitz of defamatory posts deliberately and maliciously besmirching the character of Mr. Bobulinski.  Rep. Raskin has also been sued for defamation by virtue of his failure to retract and delete his own X posts.

40.    Defendant made these lies against Mr. Bobulinski to defame and discredit his character and punish anyone who dared speak up against the Biden Family for its many improprieties with the Chinese Communist Party and affiliated organizations.

41.    In his ~ 18 months as a freshman member of Congress, Defendant has conducted himself shamefully under the misguided belief that he is unaccountable for the real impact of his inflammatory and maliciously defamatory statements that are not only well outside the scope of his employment, but also are prone to incite violence and recklessly endanger the targets of his statements.

42.    Particularly noteworthy of current events, Defendant was forced to apologize after going on live television and saying that President Trump "has to be eliminated."[3] Such a shocking statement is not hyperbolic rhetoric, but rather, may well have precipitated the assassination attempt on President Trump's life in Butler, Pennsylvania a few weeks ago.  Protected by a SEAL Team at great expense, which is required due to the lies published by Defendant, Mr. Bobulinski and his family have also received death threats.

### CAUSES OF ACTION
### COUNT I
### (Defamation and Defamation *Per Se*)

43.    Plaintiff incorporates by reference the above paragraphs as though set forth fully herein.

44.    Defendant has repeatedly defamed Mr. Bobulinski on X, outside the scope of his employment, by claiming that, Mr. Bobulinski uses a Trump campaign-paid lawyer to lie and make false allegations, that he has lied about the Bidens since

---

[3] Sarah Fortinsky, *House Democrat apologizes after saying Trump 'has to be eliminated'*, THE HILL (Nov. 21, 2023), https://thehill.com/homenews/house/4321089-trump-goldman-apology-eliminated-democracy-2024/.

October 2020, that his sworn testimony is Russian disinformation, that he is a Trump campaign plant, and even that a criminal referral should be made against him for falsely claiming he lied to Congress.

45.     Defendant's assertions are categorically false.

46.     Defendant published the defamatory statements on X, knowing that they were false or with reckless disregard for the truth. Given Defendant's employment, and position with the Democratic party, he knew Mr. Bobulinski was telling the truth and knew Mr. Bobulinski was doing so for the benefit of the American people. Defendant deliberately acted with reckless disregard for those truths.

47.     The defamatory statements constitute defamation *per se* because by claiming that Mr. Bobulinski lied and made false allegations, Defendant accused Mr. Bobulinski of committing perjury and violating 18 U.S.C. § 1001, for lying to Congress. Defendant even went so far as to say that Mr. Bobulinski should be referred for criminal charges for falsely claiming he lied to Congress. Further, by claiming that Mr. Bobulinski is spreading Russian disinformation, and is a Trump campaign plant, while using a Trump campaign-paid lawyer, Defendant sought to destroy Mr. Bobulinski's credibility, and it subjected him to hatred, distrust, ridicule, contempt, and/or disgrace by a certain segment of America and the world which lives in an alternate reality. The statement inherently causes people to view Mr. Bobulinski as untrustworthy by negatively implying that his testimony is bought and paid for without the assistance of any extrinsic evidence.

48.     The defamatory statements have directly and proximately caused Mr. Bobulinski to suffer significant damages, including damage to his reputation, humiliation, embarrassment, and mental anguish, as well as to his business ventures, and profession necessitating great expense to maintain personal security. These damages were foreseeable, are ongoing, long-lasting, and will continue to be suffered in the future.

49.     Defendant published the defamatory statements knowingly, intentionally, willfully, wantonly, and maliciously, with intent to harm Mr. Bobulinski, or in blatant disregard for the substantial likelihood of causing him harm and were part of a well-established malicious pattern by Defendant, thereby entitling Plaintiff to an award of punitive damages.

50.     As a direct and proximate result of the misconduct of Defendant, Mr. Bobulinski is entitled to compensatory, special, and punitive damages, in the sum of $10,000,000.00, or such greater amount as is determined by the jury.

## COUNT II
### (Defamation by Implication)

51.     Plaintiff incorporates by reference the above paragraphs as though set forth fully herein.

52.     On March 21, 2024, Defendant wrote, "Tony Bobulinski has used a Trump campaign-paid lawyer to make false allegations since October 2020."

53.     Defendant also wrote on February 16, 2024, calling Mr. Bobulinski a "partisan actor" who is using a "Trump-funded attorney."

54.     In doing so, Defendant intentionally omitted important context that neither President Trump, nor any entities affiliated with President Trump, are paying for Mr. Bobulinski's legal fees at all, and certainly not to lie.

55.     Indeed, Defendant intentionally omitted this context in an attempt to discredit Mr. Bobulinski by nonsensically trying to tie together a true fact that a PAC has paid his lawyer's firm, Elections LLC, in the past for work completely unrelated to his lawyer's representation of Mr. Bobulinski, in an attempt to imply defamatory innuendo and an understanding that President Trump is paying for Mr. Bobulinski's testimony before congress. In so doing, Defendant's defamation by implication sought to discredit Mr. Bobulinski.

56.     Defendant's omission of this context left a reasonable viewer with the impression that President Trump or his campaign is paying for Mr. Bobulinski's legal fees, and ultimately, his testimony. It also left viewers to falsely believe that Mr. Bobulinski was testifying for political purposes, as opposed to his true motivation, which has been to tell the truth about the Biden Family's enterprise of selling influence to foreign actors.  Mr. Bobulinski felt compelled to do so, as was his civic duty, for the sake of disclosure to, and preservation of, the Republic.

57.     Defendant intentionally created this inference to maliciously attack the source, not the substance of the revelations by Mr. Bobulinski in his pursuit to expose the truth about the Biden Family corruption and schemes.

58.     The inference made is defamatory as it leads to hatred, distrust, ridicule, contempt, and/or disgrace for Mr. Bobulinski. Indeed, it caused not only a large

segment of the nation which delusionally despises all things Trump regardless of reality, but also causes otherwise rational and reasonable viewers, including personal and professional contacts, colleagues and clients, not to trust or find credibility with Plaintiff.

59.    Defendant made the statement with malice.  He intended and endorsed the inference because he wanted to continue to discredit Mr. Bobulinski in order to serve Defendant's personal political agenda.

60.    As a direct and proximate result of the misconduct of Defendant, Mr. Bobulinski suffered significant damages, including damage to his reputation, humiliation, embarrassment, and mental anguish, as well as to his business ventures, and profession necessitating great expense to maintain personal security. These damages were foreseeable, are ongoing, long-lasting, and will continue to be suffered in the future.

61.    is entitled to compensatory, special, and punitive damages, in the sum of $10,000,000.00 or such greater amount as is determined by the jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Anthony Bobulinski respectfully requests this Court to enter a judgment in his favor and grant relief against Defendant as follows:

a. An award of compensatory, special, and punitive damages of twenty million dollars ($20,000,000.00);

b. An award of Plaintiff's costs associated with this action, including but not limited to his reasonable attorneys' fees and expenses; and

c.  Such other and further relief as the Court deems just and appropriate

to protect Plaintiff's rights and interests.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 5, 2024                    ANTHONY BOBULINSKI
                                         *By Counsel*


                                         Respectfully submitted,

                                         /s/      *Jesse R. Binnall*
                                         Jesse R. Binnall (VA022)
                                         John C. Sullivan (*pro hac vice*)
                                         Jared J. Roberts (*pro hac vice*)
                                         BINNALL LAW GROUP, PLLC
                                         717 King Street, Suite 200
                                         Alexandria, Virginia 22314
                                         Phone: (703) 888-1943
                                         Fax: (703) 888-1930
                                         Email: jesse@binnall.com
                                                 jcs@binnall.com
                                                 jared@binnall.com

                                         *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on August 5, 2024, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

*/s/     Jesse R. Binnall*
Jesse R. Binnall

*Counsel for Anthony Bobulinski*